CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 3 1 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FRANK THOMAS LINKENHOKER, JR., | ) |
| | ) Civil Action No. 7:12CV00021 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Frank Thomas Linkenhoker, Jr., was born on January 3, 1964, and eventually completed the ninth grade in school. Mr. Linkenhoker has been employed as a warehouse worker, handyman, building maintenance worker, food preparation worker, and painter. He last worked in 2008.[1] On April 25, 2009, Mr. Linkenhoker filed an application for a period of disability and

---

[1] The Administrative Law Judge found that all of plaintiff's work activity after his date of alleged disability onset was "an unsuccessful work attempt." (TR 12).

disability insurance benefits. Plaintiff alleged that he became disabled for all forms of substantial gainful employment on December 31, 2007, due to diabetes, diabetic neuropathy, depression, cardiovascular problems, dizzy spells, and left knee problems.[2] Mr. Linkenhoker now maintains that he has remained disabled to the present time. The record reveals that plaintiff met the insured status requirements of the Act through the second quarter of 2008, but not thereafter. See, gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, Mr. Linkenhoker is entitled to a period of disability and disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment, within the meaning of the Act, on or before June 30, 2008. See gen., 42 U.S.C. § 423(a).

Plaintiff's claim was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated March 18, 2011, the Law Judge also ruled that Mr. Linkenhoker was not disabled. The Law Judge found that, prior to the termination of insured status, Mr. Linkenhoker suffered from obesity, severe degeneration of the medial meniscus of the left knee with medial extrusion and bulge, degenerative disease and internal derangement of the left knee, and diabetes mellitus. (TR 13). The Law Judge noted that plaintiff was said to be suffering from diabetic neuropathy some months after termination of insured status. (TR 13). Because of these impairments, the Law Judge determined that Mr. Linkenhoker became disabled for all of his past relevant work roles prior to the termination of his insured status. (TR 19). However, the Law Judge found that plaintiff retained sufficient functional capacity for a limited range of sedentary work activity on and before June 30, 2008. (TR 17). The Law Judge assessed Mr. Linkenhoker's residual functional capacity as follows:

---

[2] At the administrative hearing, plaintiff amended his application to reflect an alleged disability onset date of April 1, 2006. (TR 29-31).

2

> After careful consideration of the entire record, this Administrative Law Judge finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with the following exceptions: the claimant could stand and walk 2 hours in an 8 hour workday, could perform limited pushing/pulling with the left lower extremity, could not perform crawling or climbing of ladders, ropes, or scaffolds, could perform occasional climbing of ramps or stairs, could perform other posturals occasionally (balance, kneel, stoop and crouch), could not work around hazards or on vibrating surfaces, and could not perform work tasks that required driving a vehicle.

(TR 17).

Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge held that plaintiff retained sufficient functional capacity to perform several specific sedentary work roles existing in significant number in the national economy at all relevant times on and before June 30, 2008. (TR 19). Accordingly, the Law Judge ultimately concluded that Mr. Linkenhoker was not disabled, and that he is not entitled to a period of disability or disability insurance benefits. (TR 20). See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Linkenhoker has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's

3

education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. While plaintiff has been treated for a variety of physical difficulties over the years, the medical record clearly establishes that plaintiff's most serious problems consist of severe degeneration in his left knee and diabetes mellitus with diabetic neuropathy. The treating physicians who addressed plaintiff's knee problems during the months immediately prior to the termination of plaintiff's insured status, felt that Mr. Linkenhoker could do sedentary work despite the severe degenerative disease and internal derangement in the left knee. During this same period, a treating orthopaedist opined that plaintiff could be expected to return to his regular work after a surgical procedure. As for plaintiff's diabetes, a doctor who first saw Mr. Linkenhoker some time after termination of insured status opined that plaintiff's neuropathy had resulted in total disability at least as early as April 1, 2006. Nevertheless, based on the absence of any medical notation of severe and debilitating neuropathy prior to the termination of insured status, the court believes that the Administrative Law Judge properly discounted this medical opinion. Considering the reports of those physicians who did treat Mr. Linkenhoker prior to the termination of his insured status, and immediately thereafter, the court believes that the record supports the Law Judge's finding of residual functional capacity for a limited range of sedentary work activity. The court also finds that the Administrative Law Judge properly relied on the testimony of a vocational expert in assessing plaintiff's capacity for work during the period in which plaintiff still enjoyed insured status. Accordingly, the court concludes that the final decision of the Commissioner denying

plaintiff's entitlement to benefits is supported by substantial evidence. It follows that the Commissioner's final decision must be affirmed.

Mr. Linkenhoker has a history of knee problems. On December 22, 1994, plaintiff underwent arthroscopic surgery of the left knee. Thereafter, he did reasonably well until March 2, 2008, when he slipped at work and reinjured the knee. Thereafter, plaintiff saw Dr. Darrell F. Powledge. Based on a clinical evaluation of the left knee, Dr. Powledge opined that Mr. Linkenhoker could work in a "sitting" position. (TR 333).

After an examination on March 13, 2008, Dr. Arthur Slaughter diagnosed left knee sprain and hamstring strain. Dr. Slaughter stated that Mr. Linkenhoker could perform "sit down work only." (TR 328). An MRI on April 1, 2008 revealed severe degenerative disease and internal derangement of the left knee.

Dr. George Henning, an orthopaedic specialist, examined Mr. Linkenhoker on April 23, 2008. Based on the MRI, Dr. Henning diagnosed severe meniscus damage and a ruptured ACL. Dr. Henning recommended arthroscopic surgery, and recommended that Mr. Linkenhoker not return to work until after the surgery. (TR 291).

In short, based on the reports from the doctors who saw Mr. Linkenhoker in the months prior to the termination of plaintiff's insured status, the court finds that plaintiff suffered from severe dysfunction in the left knee. However, no doctor suggested that the condition was so severe as to render plaintiff totally disabled for all forms of work. Indeed, two of the doctors who examined plaintiff specifically determined that he could perform work activity in a seated position. The court agrees that the reports from Dr. Henning, Dr. Slaughter, and Dr. Powledge support the Commissioner's finding that Mr. Linkenhoker retained sufficient functional capacity to engage in certain sedentary work activities at all relevant times prior to the termination of his insured status.

Plaintiff's diabetes, and the manifestations of his diabetes, present a somewhat closer question. Mr. Linkenhoker has been treated for elevated blood sugar levels at least since 2006. On November 6, 2008, he was diagnosed with diabetes mellitus type II. Since that time, several doctors have provided treatment for uncontrolled diabetes and severe peripheral neuropathy.

Dr. George Wagner began treating Mr. Linkenhoker in late 2008. At that time, Dr. Wagner diagnosed diabetes mellitus, hypertension, and diabetic neuropathy. Dr. Wagner continued to treat plaintiff on a regular basis. As outlined above, on August 20, 2009, Dr. Wagner produced findings which suggest that Mr. Linkenhoker had become disabled due to diabetic neuropathy at least as early as April 1, 2006, more than two and one-half years prior to Dr. Wagner's first examination of plaintiff. However, despite Dr. Wagner's opinion, the court believes that the Administrative Law Judge properly determined that plaintiff's neuropathy did not reach a disabling level of severity at any time on or before June 30, 2008. Simply stated, while Mr. Linkenhoker was seen on a regular basis by several different physicians during the months prior to the termination of his insured status, no examining physician listed findings or clinical manifestations of severe and disabling diabetic neuropathy. In such circumstances, the court finds no basis for overturning the Law Judge's assessment of the medical evidence, or the decision that plaintiff's diabetic neuropathy simply had not progressed to a disabling level of severity on or before June 30, 2008.

Based on a finding of disability for past relevant work, and in order to assess plaintiff's capacity to perform alternate work activity, the Administrative Law Judge relied on testimony from a vocational expert given at the administrative hearing. In questioning the expert, the Law Judge propounded detailed hypothetical questions which assumed a variety of physical limitations, and which mirror many of plaintiff's own complaints about his residual functional capacity. (TR 56-57). In response, the vocational expert identified several specific work roles in which Mr. Linkenhoker could

6

have been expected to perform. (TR 57-58). It appears to the court that the vocational expert's evaluation, and the assumptions under which the expert deliberated, are both reasonable and consistent with the evidence of record. Thus, the court concludes that the Law Judge's consideration of the vocational factors is also supported by substantial evidence.

On appeal to this court, plaintiff argues that the Administrative Law Judge improperly discounted the credibility of testimony given by plaintiff at the administrative hearing. It is true that at the time of the administrative hearing on January 27, 2011, Mr. Linkenhoker described physical manifestations which could be reasonably expected to result in total disability even for sedentary levels of work. Indeed, by this point in time, and given Dr. Wagner's medical report, there is substantial reason to believe that plaintiff's diabetic neuropathy had progressed to a disabling level of severity. However, the court agrees that plaintiff's testimony does not tend to establish that his diabetic neuropathy constituted or contributed to an overall disability at any time prior to the termination of his insured status on June 30, 2008. Indeed, all of the evidence in this case, including medical reports and lay testimony, suggests that Mr. Linkenhoker's primary problem during this earlier period of time consisted of mechanical dysfunction in his left knee. The court does not perceive any error in the Administrative Law Judge's determination not to relate all of plaintiff's testimony back to the period in which he still enjoyed insured status. Once again, the medical record suggests that the Administrative Law Judge was correct in declining to do so.

For the reasons stated, the court concludes that the Commissioner's final decision in this case is supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. In affirming the administrative decision, the court does not suggest that Mr. Linkenhoker was free of all pain, discomfort, and physical dysfunction, even during the period in which he still

7

Case 7:12-cv-00021-GEC   Document 15   Filed 10/31/12   Page 7 of 8   Pageid#: 704

enjoyed insured status. Without question, plaintiff experienced problems with his left knee during this earlier period of time which prevented performance of anything more than sedentary levels of work activity. He had also begun to develop diabetic problems which would eventually lead to significant impairment in his extremities. However, it must again be noted that the doctors who treated plaintiff's left knee during the critical period of time clearly believed that he could, or soon would, return to regular work activity. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Once again, it appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 31st day of October, 2012.

_____
Chief United States District Judge